UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MARK E.,[1]<br>Plaintiff,<br>v.<br>FRANK J. BISIGNANO, Commissioner of Social Security,<br>Defendant. | Case No.: 25cv1393-LR<br>**ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW**<br>**[ECF No. 14]** |

On June 2, 2025, Plaintiff Anthony Mark E. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant") denying Plaintiff's application for social security disability benefits and supplemental security income benefits. (ECF No. 1.) Now pending before the Court is the parties' "Joint Motion for Judicial Review" seeking judicial review. (ECF No. 14 ("J. Mot.").) For the reasons discussed below, the Court

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court's opinions in Social Security cases filed under 42 U.S.C. § 405(g) "refer to any non-government parties by using only their first name and last initial."

**ORDERS** that judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

## I. PROCEDURAL BACKGROUND

On May 6, 2021, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act, alleging disability beginning on January 1, 2008. (ECF No. 8 ("AR")[2] at 274–88.) After his application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an Administrative Law Judge ("ALJ"). (Id. at 181–90, 197–204, 208–09.) An administrative hearing was held on April 27, 2023. (Id. at 77–111.) Plaintiff appeared at the hearing with counsel, and testimony was taken from him and a vocational expert ("VE"). (See id.)

On April 2, 2024, the ALJ issued a written decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of the decision. (Id. at 54–71.) The ALJ's decision became the final decision of the Commissioner on August 23, 2023, when the appeals council denied Plaintiff's request for review. (Id. at 1–6.) This timely civil action followed. (See ECF No. 1.)

## II. SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2008, Plaintiff's alleged onset date. (AR at 57.) At step two, the ALJ found that Plaintiff had the following severe impairments: attention-deficit hyperactivity disorder ("ADHD"); learning disability, not

[2] "AR" refers to the Administrative Record filed on August 1, 2025. (ECF No. 9.) The Court's citations to the AR in this Order are to the page numbers listed on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing System ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

otherwise specified ("NOS"); anxiety; depression; and obesity. (Id.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (Id. at 58.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(c) and 20 C.F.R. § 416.967(c), with the following additional nonexertional limitations:

> The claimant can frequently balance, stoop, or crouch. He can occasionally kneel or crawl. He can frequently reach, handle, finger, and feel bilaterally. The claimant is limited to work involving simple repetitive tasks and only occasional work-related interactions with supervisors, coworkers, or the public. The claimant requires a habitual work environment. He must avoid work requiring driving a motor vehicle as a duty of the job.

(Id. at 60.)

At step four, the ALJ found that Plaintiff did not have past relevant work. (Id. at 68.) The ALJ then proceeded to step five of the sequential evaluation process. The ALJ classified Plaintiff as a younger individual on the alleged onset date for whom transferability of skills was not an issue. (Id.) Based on the VE's testimony that a hypothetical person with Plaintiff's age, education, work experience, and RFC,[3] could perform the requirements of occupations that existed in significant numbers in the national economy, the ALJ found that Plaintiff had not been disabled from January 1,

---

[3] The VE testified that a hypothetical person with Plaintiff's age (twenty-seven years old at the time of the hearing), education, work experience, and *RFC to perform the full range of medium work with additional nonexertional limitations enumerated in the RFC the ALJ assessed for Plaintiff*, could perform the requirements of occupations that existed in significant numbers in the national economy, such as floor waxer, motor vehicle assembler, and counter supply worker. (Id. at 69; see also id. at 104–06.) In the alternative, the VE testified that a hypothetical person with Plaintiff's age, education, work experience, and *RFC limited to light exertion*, could perform the requirements of occupations that existed in significant numbers in the national economy, such as sub-assembler, housekeeping cleaner, and marker. (Id. at 69–70; see also id. at 106.)

2008, through the date of the ALJ's decision. (Id. at 70.)

## III. DISPUTED ISSUE

The sole issue Plaintiff raises in the Joint Motion for Judicial Review is whether the ALJ properly considered Plaintiff's testimony. (J. Mot. at 4.)

## IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error. See id.; Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)). In determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion," and "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021), superseded by regulation on other grounds. Where the evidence can be interpreted in more than one way, the court must uphold the ALJ's decision. Id. at 1115–16; Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016). The court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely." Revels, 874 F.3d at 654 (internal quotation omitted).

/ / /

/ / /

/ / /

/ / /

/ / /

## V. PLAINTIFF'S TESTIMONY AND STATEMENTS

### A. Plaintiff's Testimony During Administrative Hearing

Plaintiff testified that he weighs 290 pounds and is 5'8" tall. (AR at 92.) He lives with his disabled father; his mother lives separately, but Plaintiff talks to her daily and sees her during weekends. (Id. at 85–86, 92.) Plaintiff plays video games every day and walks on a trail around his apartment. (Id. at 91–92, 99.) He does not walk far from his apartment because he does not know street names and the layout of the city, may forget where he is, and may not be able to find his way back. (Id. at 99.)

Plaintiff and his father grocery shop, and Plaintiff sometimes helps carry groceries. (Id. at 92–93.) He does not have any friends, and Plaintiff's father drives him to medical appointments. (Id.) Plaintiff has never taken a bus or a trolley, and has not learned how to drive a car because studying for the driving test is "difficult." (Id. at 86, 93–94.)

Plaintiff had a girlfriend who lives on the East Coast whom he met on Facebook. (Id. at 86–87.) Plaintiff has not traveled to the East Coast, but his former girlfriend visited him in San Diego once. (Id. at 87.) Plaintiff is no longer active on Facebook and social media, but he used to be active in the past. (Id. at 88.)

Plaintiff helped his uncle, who works in construction, around the house "throw[ing] away debris," but Plaintiff was not paid for that work. (Id.) Plaintiff stated that he was "volunteering when he was help[ing] his uncle," but his uncle at times gave him money. (Id. at 89.) Plaintiff explained that he helped "three or four days" during the month when his uncle did construction projects around his house. (Id. at 97.)

Although Plaintiff considered applying for a job at Costco, he did not apply because of irritable bowel syndrome ("IBS") issues, anxiety, and depression. (Id. at 89–90.) He testified that he cannot work due to his mental and physical limitations. (Id. at 93–94.) Because of ADHD, Plaintiff forgets, misplaces, and loses things, and has "hard time understanding most words." (Id. at 93, 98.) Sometimes he forgets to shower, and his father reminds him to do so, and his mother reminds him to take medications, make his bed, and not misplace things. (Id. at 99–100.) Plaintiff has difficulties with learning

and understanding words, and struggles with reading. (Id. at 99.) Because of anxiety and depression, he lies down every day and does not like to be around people. (Id. at 93, 100–101.)

Plaintiff also testified that his carpal tunnel syndrome and IBS are getting worse. (Id. at 94.) He plays videogames thirty minutes per day, but needs to stop because he can "barely hold . . . objects in [his] hand without [his] hand hurting within five minutes." (Id.) When the ALJ noted that Plaintiff's medical records show that he had "5/5 strength in both of [his] hands," Plaintiff responded that the most recent test by his neurologist resulted in Plaintiff's referral to therapy. (Id. at 94–95.) When the ALJ pointed out that the most recent test by Plaintiff's neurologist listed findings of "5 out of 5 bilaterally," Plaintiff responded that, recently, his hands had become numb and started hurting. (Id. at 95.)

Plaintiff further stated that although he did not list carpal tunnel syndrome as a physical limitation when he filed his disability claim, he developed issues with carpal tunnel after he filed the claim. (Id.) He has numbness in his right and left hands, difficulties with typing and grip, and weakness in his wrist; frequently drops heavy items, and can lift five pounds for about five minutes before his wrist starts hurting. (Id. at 96–97.) Further, because of IBS, Plaintiff needs to use a restroom every thirty minutes, twenty-to-thirty times per day. (Id. at 98.) He also has difficulties with sleep, goes to bed around 2 a.m., and wakes up around 10:00–11:00 a.m. (Id. at 100.)

**B. Plaintiff's Statements in Disability Report and Adult Function Report**

In his Disability Report dated June 10, 2021, Plaintiff stated that ADHD, anxiety, depression, and learning disability limit his ability to work. (Id. at 297, 302.) He also stated that he "ha[s] never worked." (Id. at 298–99.)

In his Adult Function Report dated July 8, 2021, Plaintiff stated that he cannot focus on simple tasks because of ADHD, and that he has depression, anxiety, and "anger problem." (Id. at 314, 321.) Additionally, his "prediabetic" condition and "stomach problems" force him to frequently use the bathroom. (Id. at 314.)

Plaintiff wakes up in the morning, eats breakfast, plays videogames, showers, and "continues playing video games until dinner." (Id. at 315.) His "depression gets in the way and keeps[s] [him] from doing things," he has insomnia, racing thoughts, forgets to shower, does not shave, is able to apply deodorant and pick out clothes, but needs reminders to take medications. (Id. at 315–16.) He eats microwaveable meals, sandwiches and cereal, prepares food several times per week, sometimes washes dishes and vacuums, takes out the trash, and cleans his room. (Id. at 316.) He does housework for two hours before getting distracted. (Id.)

Plaintiff sometimes walks outside, but prefers to stay inside because he does not want to get lost. (Id. at 317.) He does not drive because he cannot remember "the answers to the [driving] permit test." (Id.) He shops in stores, can pay bills and count change, but cannot handle money. (Id.) He writes poems, plays video games, watches TV, and listens to music, but cannot focus on some of those activities. (Id. at 318.) He grocery shops with his father and visits his mother once or twice per week. (Id.)

Plaintiff further reported that his conditions affect his memory, concentration, and ability to complete tasks. (Id. at 319.) He can walk a mile, but needs to rest every fifteen minutes. (Id.) He does not finish what he starts, does not follow instructions well, and does not interact with authority figures. (Id.) He does not handle stress well, and when his routines change, his "anxiety goes up and [he] get[s] depressed," angry, and upset. (Id. at 320.) When Plaintiff gets angry, he "bite[s]" himself. (Id.) Plaintiff wears reading glasses daily, and takes Methylphenidate[4] and Fluoxetine.[5] (Id. at 321.)

---

[4] Methylphenidate is a stimulant, commonly known as Ritalin, which is used to treat ADHD. See United States v. Boettjer, 569 F.2d 1078, 1079 (9th Cir. 1978); Alkana v. Berryhill, Case No. CV 17-5743-JPR, 2018 WL 3546281, at *4 n.5 (C.D. Cal. July 19, 2018).

[5] Fluoxetine is an antidepressant, also known under the brand name Prozac. See Lakonnie M. v. Kijakazi, Case No.: 22cv985-LR, 2023 WL 6378047, at *4 n.6 (S.D. Cal. Sept. 27, 2023); Hermiz v. Berryhill, Case No.: 3:18-cv-01035-BEN(KSC), 2019 WL 3780271, at *3 n.3 (S.D. Cal. Aug. 9, 2019); Humphreys v. Astrue, No. 12–cv–328–W(PCL), 2014 WL 1255889, at *4 (S.D. Cal. Mar. 24, 2014).

## VI. DISCUSSION

### A. Parties' Arguments

Plaintiff argues that the ALJ did not properly consider his subjective symptom testimony. (See J. Mot. at 4–16, 22–24.) Plaintiff asserts that the ALJ did not connect specific portions of Plaintiff's testimony to the parts of the record supporting the ALJ's decision when he concluded that objective evidence did not support Plaintiff's testimony. (Id. at 7–11.) Plaintiff further alleges that although the ALJ determined the Plaintiff improved with treatment, the ALJ did not consider the impact of Plaintiff's "bad days" on his ability to work full-time. (Id. at 11–13, 22–23.) Additionally, Plaintiff contends that the ALJ did not establish that his "sporadic" daily activities contradicted his testimony or demonstrated his ability to spend a substantial part of the day doing activities transferable to a full-time work setting. (Id. at 13–16, 23–24.) Plaintiff therefore maintains that substantial evidence does not support the ALJ's decision to discount his subjective symptom testimony. (See id.)

Defendant responds that the ALJ appropriately evaluated Plaintiff's alleged symptoms. (See id. at 17–19.) Defendant asserts that the ALJ discounted Plaintiff's statements because they were inconsistent with objective evidence and because Plaintiff improved with treatment. (See id. at 21–22.) Defendant further claims that the ALJ properly considered and evaluated Plaintiff's subjective complaints in light of Plaintiff's reported daily activities. (Id. at 19–20.) Defendant also states that the ALJ reasonably discounted Plaintiff's testimony by referencing Plaintiff's ability to "work informally on and off" performing construction work and landscaping with his uncle. (Id. at 20.) Defendant maintains that the ALJ properly found that Plaintiff had impairments that impacted his ability to work, but not to the extent that the impairments rendered Plaintiff

totally disabled. (Id. at 21.) Defendant therefore argues that substantial evidence supported the ALJ's decision to discount Plaintiff's subjective symptom testimony. (Id.)

**B. Applicable Law**

The Ninth Circuit has established a two-part test for evaluating a claimant's allegations regarding subjective symptoms. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017); see also Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged." Trevizo, 871 F.3d at 678 (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)). Second, if a claimant presented such evidence, and there is no evidence of malingering, the ALJ may reject the claimant's statements about the severity of the claimant's symptoms "only by offering specific, clear and convincing reasons for doing so." Id.

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." Id. at 489. Instead, the ALJ must identify the testimony regarding the claimant's symptoms that the ALJ finds not credible, and explain what evidence undermines the claimant's testimony. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); see also Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony, and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony about the intensity" of her symptoms); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (providing that the ALJ's reasons for discounting a claimant's testimony must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony").

"Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about symptoms, evidence from medical sources, and observations by the Agency's employees and other individuals. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2016 WL 1119029. In addition, the ALJ may consider other factors, such as the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2016 WL 1119029.

**C. Analysis**

The parties do not dispute the ALJ's finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (See AR at 61; see also J. Mot.) Accordingly, the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.

Turning to the second prong of the ALJ's inquiry, neither party alleges that the ALJ found that Plaintiff was malingering. (See J. Mot.) The Court therefore is required to determine whether the ALJ identified which of Plaintiff's subjective allegations of impairment he discounted, and whether the ALJ provided specific, clear, and convincing reasons for doing so. See Brown-Hunter, 806 F.3d at 489; Lambert, 980 F.3d at 1277.

The ALJ summarized Plaintiff s written statements and testimony during the administrative hearing as follows:

> In an Adult Function Report, the claimant alleged an inability to focus on simple tasks because of attention-deficit hyperactivity disorder and random episodes of depression, an anger problem, and prediabetes causing frequent bathroom use and stomach problems. The claimant also alleged bad anxiety. The claimant reported spending the day playing video games. The claimant reported being able to take care of personal care, prepare simple meals, perform light household chores, shop in stores, and handle money. He liked

> to write poems, play video games, watch television, and listen to music daily. Functionally, the claimant alleged no problems with exertional, postural, or hand use. He could walk a mile. The claimant alleged mental limitations with memory, completing tasks, concentration, understanding, and following instructions. The claimant did not report using any assistive devices.
>
> At the hearing, the claimant testified he lives with his father. He does not receive any income for work activity. He has not had any surgery. He has a high school education. He walks on a trail around his apartment. He weighs 290 pounds, and his height is 5'8". He prepares food in the microwave. He helps his father grocery shop sometimes. He does not have friends. He has a hard time understanding most words. He has anxiety attacks. His father drives him. He has carpal tunnel that is not going away. He plays video games for 30 minutes. He can barely hold objects in his hand without pain. He has numbness in both hands. He can only lift 5 pounds. He has irritable bowel syndrome and uses the restroom every 30–60 minutes. He is not around people.

(AR at 61 (internal citation omitted).) The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (Id.) The ALJ then discounted Plaintiff's subjective symptom testimony citing the following reasons: (1) objective medical evidence in the record was not consistent with Plaintiff's reported symptoms and limitations, (2) Plaintiff's treatment was conservative and effective in controlling his symptoms, and (3) Plaintiff's daily activities contradicted his testimony and involved skills that could be transferred to the workplace. (See id. at 62.) The Court therefore will examine each of the ALJ's stated reasons for discontinuing Plaintiff's subjective symptom testimony below.

/ / /

/ / /

/ / /

/ / /

/ / /

**1. Inconsistency with medical evidence**

The ALJ discounted Plaintiff's subjective symptom testimony because Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms" were "only partially consistent with the record." (Id.) The ALJ reasoned that "the imaging, testing, physical examinations, and mental status examinations . . . d[id] not fully support [Plaintiff's] allegations." (Id.)

Generally, the ALJ may not reject the claimant's subjective complaints based *solely* on a lack of medical evidence to fully corroborate the alleged severity of pain. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). However, "when objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) (explaining that Burch does not forbid the ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony). Contradiction of the claimant's subjective complaints with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ must identify "specific, clear, and convincing examples" that contrast the claimant's "subjective [] testimony with objective medical evidence." Smartt, 53 F.4th at 499.

In this case, the ALJ noted that although Plaintiff alleged disabling mental limitations, his mental status examinations were routinely within normal limits, his speech was normal, attention and concentration were intact, he had fair insight, intact cognitive function and judgment, and did not have delusions. (AR at 64 (citing id. at 776, 1120, 1128, 1151).) The ALJ cited records from Certified Physician Assistant Clarion dated July 2, 2019, stating that the findings of Plaintiff's psychiatric examination were "normal," Plaintiff was "[o]rineted to time, place & situation," had appropriate mood and affect, and normal insight and judgement. (Id. at 776.)

The ALJ then cited notes from Dr. Durr, who conducted Plaintiff's psychological consultative examination on August 10, 2021, and discussed in detail Dr. Durr's findings.

(Id. at 65 (citing id. at 1001–12).) The ALJ noted that after examining Plaintiff, Dr. Durr listed diagnoses of ADHD, persistent depressive disorder, and borderline intellectual functioning. (Id. at 1006.) After conducting a mental status examination, Dr. Durr noted that Plaintiff had good hygiene and grooming, was pleasant and cooperative, had good eye contact, and did not have delusions, hallucinations, suicidal/homicidal ideation, or racing thoughts. (Id. at 1002–04.) Plaintiff was oriented to person, time and place, and the purpose of testing; his speech was normal, clear and coherent; his mood was depressed; and his affect was congruent with no obvious psychotic indicators. (Id. at 1005.) Plaintiff was not able to perform serial sevens and threes,[6] and could spell the word "music" forward but not backward. (Id.) Dr. Durr concluded that Plaintiff was able to understand, remember, and carry out short and simplistic instructions; had "mild inability to understand detailed instructions," and would likely "perform better with visual instructions than with auditory ones." (Id. at 1006–07.) Dr. Durr further determined that Plaintiff was able to make simplistic work-related decisions without special supervision, maintain consistency and pace throughout the day, follow normal rules of the workplace, and interact appropriately with supervisors, coworkers, and peers. (Id. at 1007.)

The ALJ also cited records from Licensed Clinical Social Worker Juarez dated April 7, 2022, documenting the findings of Plaintiff's mental status examination, and noting that Plaintiff was cooperative, had slow speech, euthymic mood, flat affect, normal thought process and content, intact memory, adequate attention, developmentally appropriate reasoning, judgement and insight, and good impulse control. (Id. at 1120.) The ALJ further cited progress notes from Licensed Clinical Social Worker Juarez dated

---

[6] "Serial sevens" and "serial threes" refer to a test used to assess concentration during which the subject subtracts serial sevens or serial threes from one hundred. See Salmon v. Astrue, No. 10-CV-03636-LHK, 2012 WL 1029329, at *6 n.3 (N.D. Cal. Mar. 26, 2012); Sanders v. Barnhart, 1:06cv0101 DLB, 2006 WL 8450997, at *9 (E.D. Cal. Nov. 17, 2006).

May 11, 2022, listing the following assessment: "[m]ild episode of recurrent major depressive disorder," and "[a]nxiety state, unspecified." (Id. at 115; see also id. at 1152.) Additionally, the ALJ cited progress notes from Dr. DeSilva dated July 12, 2022, documenting the findings of Plaintiff's mental status examination, and noting that Plaintiff had anxious mood, constricted affect, clear speech, logical thought process, perception within normal limits, no delusions or hallucinations, "[a]verage" intelligence, and thought content, and cognition and judgement "within normal limits." (Id. at 1128; see also id. at 1131.)

The ALJ then discussed in detail notes and findings from Plaintiff's October 24, 2023 comprehensive orthopedic consultative examination conducted by Dr. Tran. (Id. at 62–63 (citing id. at 1309–15).) Dr. Tran's physical examination revealed that Plaintiff was well-developed, well-nourished, and overweight, and that he "ambulated without an assistive device with a mild lateral trunk tilt and a minimally antalgic gait." (Id. at 1310.) Dr. Tran noted that Plaintiff weighed 280 pounds, was 68 inches tall, and his blood pressure was 160/100. (Id.) Plaintiff's Romberg test[7] was normal, his "[r]adial and dorsalis pedis pulses were intact bilaterally," range of motion of the cervical and lumbar spine was normal without tenderness, range of motion of the joints and extremities was normal, and straight leg raise test was negative. (Id. at 1311–13.)

Dr. Tran further stated that Plaintiff's neurologic examination showed 5/5 strength in all extremities; his reflexes, sensory, cerebellar, and cranial nerves were all intact and normal; and Plaintiff had intact lower extremity muscle strength, no muscle atrophy, and no postural or gait instability with possible S1 sacral radiculopathy. (Id. at 1313.)

---

[7] A Romberg test is a neurological examination that tests for balance issues. Delu v. Comm'r of Soc. Sec. Admin., No. CV-21-01849-PHX-DLR, 2023 WL 6890300, at *3 (D. Ariz. Oct. 19, 2023). The test includes standing unassisted with feet together with eyes open for thirty seconds and then eyes closed for thirty seconds. Anthony M. v. O'Malley, Case No. CV 23-07694-AS, 2024 WL 3469036, at *4 n.5 (C.D. Cal. June 11, 2024) (citation omitted). A negative result indicates that the patient did not lose balance during the test. Id.

Plaintiff had mild bilateral carpal tunnel syndrome, a positive Tinel's test[8] in both wrists, and normal muscle strength without muscle atrophy. (Id. at 1314.) Based on his examination of Plaintiff, Dr. Tran opined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk for six hours in an eight-hour workday, and frequently use ramps/stairs, climb, bend, stoop, kneel, crouch, and crawl. (Id.) Additionally, Dr. Tran determined that Plaintiff did not have any reaching, grasping, fingering, feeling, or wrist movement limitations. (Id.)

The ALJ cited progress notes and findings from Plaintiff's consultative examination that documented his body mass index ranging between 38–46, which the ALJ stated indicated obesity. (Id. at 63 (citing id. at 543–1000, 1308–17).) The ALJ observed that he had considered Plaintiff's complaints of back pain, knee pain, and leg pain, which he stated "may be a result of [Painitff's] obesity," but further noted there was no objective medical evidence in the record, such as imaging, testing, or physical examination demonstrating that Plaintiff had any disorders of the spine, joints, or lower extremities. (Id. at 63.)

Further, the ALJ stated that although Plaintiff reported bilateral hand numbness and pain that prevented him from holding objects for prolonged periods of time, and that he could not lift a more than five pounds, his physical examinations did not support such allegations. (Id.) The ALJ cited records showing that Plaintiff had adequate grip strength, normal muscle strength, no muscle atrophy, and no carpal tunnel syndrome surgeries. (Id. (citing id. at 1308–15).) The ALJ further noted that imaging of Plaintiff's right wrist was negative and imaging of his left wrist indicated ulna minus variant without other abnormalities. (Id. at 63 (citing id. at 990–91).) Additionally, the ALJ

---

[8] A Tinel's test is used to diagnose carpal tunnel syndrome. See id. at *4 n.5. During the test, a physician lightly taps over the irritated nerve; if the tapping elicits a sensation of tingling or "pins and needles" along the nerve, the test is positive and may indicate carpal tunnel syndrome. Id.

cited Plaintiff's treatment records from East County Neurology, which indicated that Plaintiff's upper extremity strength was intact, but Plaintiff had positive Tinel's sign bilaterally with decreased sensation on the middle and index fingers, and his July 2021 electromyogram and nerve conduction studies, which showed mild bilateral mixed median neuropathy. (Id. at 63–64 (citing id. at 1008–18).) The ALJ also noted that in June 2022, Plaintiff's physical examination was unremarkable, including hand grip, fingers extension, wrist flexion and extension, elbow flexion and extension, and his upper arm abduction and adduction was 5/5 bilaterally, he had symmetric deep tendon reflexes, stable gait, but positive Phalen's sign[9] in the hands. (Id. at 64 (citing id. at 1316–17).)

The ALJ next cited July 27, 2022 imaging of Plaintiff's lumbar spine, which was negative, and imaging of his cervical spine, which showed possible limbus vertebral body at C6. (Id. at 62 (citing id. at 1241–42).) Further, the ALJ cited medical records that contained relatively unremarkable physical examination findings, except for some subjective pain complaints and a mild antalgic gait, which the ALJ noted was "most likely due to Plaintiff's obesity," but the records also showed that Plaintiff had 5/5 muscle strength, no indication of any neurological deficits, and no prescribed assistive devices for ambulation. (Id. at 62 (citing id. at 394–1000, 1118–1251, 1308–15).) Additionally, the ALJ cited Plaintiff's treatment records from San Ysidro Health Center and the orthopedic consultative examination, and noted that the records contained "mostly benign findings." (Id. at 62.)

Additionally, the ALJ noted that there was no evidence in the record indicating any end organ damage or functional limitations related to Plaintiff's blood pressure, high cholesterol, or prediabetes. (Id. at 57.) The ALJ also cited Plaintiff's cardiovascular

---

[9] A Phalen's test is used to diagnose carpal tunnel syndrome. See Rosemary Guadalupe V. v. Saul, Case No.: 3:19-cv-00715-RBM, 2020 WL 85486, at *4 n.4 (S.D. Cal. Jan. 6, 2020). During the test, patients are asked to press the dorsal surface of their hands together and hold the position for thirty to sixty seconds. Id. Burning, tingling or numbness in the hands or fingers is considered a positive test and an indicator of carpal tunnel syndrome. Id.

exams, which were normal, and stated that Plaintiff's visits to emergency room with complaints of chest pain were negative and did not result in hospitalization. (Id. at 57–58 (citing id. at 1258–1303).) Further, the ALJ stated that despite Plaintiff's testimony about bilateral hand numbness, problems holding objects, and his physical examination indicative of a positive Tinel's test in both wrists, other medical examinations showed normal muscle strength without muscle atrophy, and the nerve conduction study showed only mild bilateral carpal tunnel syndrome. (Id. at 58 (citing id. at 1008–18, 1243–51, 1314, 1316–17).) Additionally, the ALJ stated that although Plaintiff testified that he had irritable bowel syndrome that required him to use the restroom every thirty-to-sixty minutes, "there [wa]s no objective evidence of any such condition," and cited Plaintiff's abdominal ultrasound and colonoscopy, both of which were negative. (Id. at 58 (citing id. at 999, 1112, 1115).) The ALJ also stated that although Plaintiff reported bilateral knee and leg pain, and groin pain, Plaintiff's physical examinations were normal, and there was "no imaging indicating any disorders and no objective diagnostic impressions from an acceptable medical source of any related conditions." (Id. at 58 (citing id. at 1308–15).)

Accordingly, the ALJ identified Plaintiff's symptom allegations that he discounted, and the ALJ cited and discussed voluminous medical records from Plaintiff's multiple medical care providers and consultative examiners that undermined Plaintiff's allegations regarding the severity of his symptoms. See Smartt, 53 F.4th at 499 (stating that the ALJ is required to identify "specific, clear, and convincing examples" that contrast the claimant's "subjective [] testimony with objective medical evidence."). The ALJ's determination was therefore supported by substantial evidence in the record. As a result, the ALJ provided a clear and convicting reason, supported by substantial evidence in the record, to discount Plaintiff's subjective symptom testimony.

/ / /

/ / /

/ / /

**2. Effectiveness of treatment and the level of rendered treatment**

The second reason the ALJ cited to discount Plaintiff's subjective symptom testimony was that Plaintiff's treatment was effective in controlling his symptoms and that the treatment was conservative. (AR at 62 (citing id. at 112–42, 145–78, 1008–18, 1308–15).) The ALJ specifically noted that "the level of treatment [Plaintiff] received is not consistent with an allegation of disabling impairments, including the type and dosage of prescribed medications." (Id. at 62.)

In assessing a claimant's subjective symptoms, an ALJ may consider the "type, dosage, effectiveness, and side effects of any medication," as well as "treatment, other than medication" the claimant receives to relieve "pain or other symptoms." See 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v), 416.929(c)(3)(iv)–(v). An ALJ cannot "reject a claimant's testimony merely because symptoms wax and wane in the course of treatment" because "[c]ycles of improvement and debilitating symptoms are a common occurrence." Garrison, 759 F.3d at 1017; see also Morales v. Berryhill, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017) (noting that some improvement "with treatment is to be expected"). Further, "[a]n ALJ cannot simply pick out a few isolated instances of improvement over a period of months or years but must interpret reports of improvement . . . with an understanding of the patient's overall well-being and the nature of her symptoms." Attmore, 827 F.3d at 877 (internal citation and quotation marks omitted). "[T]he examples an ALJ chooses must *in fact* constitute examples of a broader development." Id. (citation and internal quotation marks omitted).

In this case, the ALJ stated that Plaintiff's high blood pressure and high cholesterol had been treated with medication, and that those conditions were "amenable to proper control by adherence to recommended medical management and medication compliance." (AR at 57.) The ALJ also noted that Plaintiff was not "taking any significant pain medications other than Gabapentin, which is for mild to moderate levels of pain." (Id. at 62 (citing id. at 354).) The records the ALJ cited contain the list of Plaintiff's medications, which included Methylphenidate for ADHD, Fluoxetine for

depression, Gabapentin for carpal tunnel, Amoxicillin for sinusitis, stool softener for constipation, and Cetirizine for allergies. (Id.)

With respect to Plaintiff's mental health symptoms, the ALJ stated that Plaintiff's "mental health treatment record is rather minimal and unremarkable except for some reported clinical findings of depressed and anxious moods treated with medication management but is otherwise generally within normal limits." (Id. at 64.) The ALJ cited notes from Dr. DeSilva dated July 2, 2019, documenting Plaintiff's report that he was not taking Ritalin daily, that he was taking the medication only when he was studying, and noting Dr. Silva's recommendation that Plaintiff "stop or reduce Ritalin." (Id. (citing id. at 770).) The ALJ concluded that the records were "indicative of the lack of severity of [Plaintiff's] attention-deficit hyperactivity disorder condition." (Id. at 64.) Additionally, the ALJ cited medical records containing results of Plaintiff's fifteen separate screenings for depression during the relevant timeframe, which contained two findings of "[m]oderate depression" and thirteen findings of "[m]ild depression." (Id. (citing id. at 768).) The ALJ observed that the records documented that Plaintiff "had primarily mild depression upon screening." (Id. at 64.) The records the ALJ cited also contained results of Plaintiff's seven screenings for anxiety disorder, and listed one finding of "[m]oderate" generalized anxiety disorder and six findings of "[m]ild" generalized anxiety disorder during the relevant timeframe. (See id. at 768.) The ALJ noted that Plaintiff's overall mental health history indicated that he "continued with medication management and infrequent psychotherapy at San Ysidro Health Center demonstrating unremarkable mental status examinations except for some depression and anxiety related symptoms and no need for psychiatric hospitalizations." (Id. at 64.) The ALJ concluded that Plaintiff's "treatment is effective in stabilizing moods albeit with remaining moderate limitations," and that Plaintiff's "condition is stable with no emergency room visits, psychiatric hospitalizations, suicide attempts, or similar episodes of decompensation." (Id. at 65.) The ALJ further observed that despite Plaintiff's allegations of ongoing issues with social anxiety and problems with concentration,

Plaintiff's treatment was "routine" and "outpatient." (Id. at 65, 67.) The ALJ concluded that Plaintiff "has received minimal, conservative, outpatient treatment, which has been effective in managing his mental symptoms." (Id. at 68.)

The ALJ also noted that although Plaintiff testified that his irritable bowel syndrome required him to use the restroom every thirty-to-sixty minutes, Plaintiff was not prescribed any medication for the condition. (Id. at 58.) Next, the ALJ stated that despite Plaintiff's allegations of bilateral hand numbness and pain that prevented him from holding objects for a prolonged period of time and lifting maximum five pounds, Plaintiff was only recommended physical therapy for bilateral hand pain and numbness, using a wrist splint continuously, and prescribed Gabapentin. (Id. at 65 (citing id. at 1316–17).) The ALJ cited records that contain progress notes from Dr. Mohammad dated June 21, 2022, stating that although Plaintiff reported numbness and pain in both hands, he "[wa]s not using the splint continuously." (Id. at 65 (citing id. at 1316–17).) Additionally, the records contain Dr. Mohammad's findings after physical examination of Plaintiff noting the following: "[h]ands grip, fingers extension, wrist flexion and extension, elbow flexion and extension[,] and upper arm abduction and adduction was 5 out of 5 bilaterally"; "[d]eep tendon reflexes are symmetric"; and "Tinel's sign qualities in the hands Phaen's sing positive[sic], [and] Gait is stable." (Id. at 1317.)

The Court notes that numerous notes from Plaintiff's medical providers further support the ALJ's conclusion that Plaintiff's treatment was conservative and effective in managing his symptoms. See e.g., id. at 1248 (containing a note from Plaintiff's neurologist Dr. Mohammad dated October 31, 2022, stating that since Plaintiff's EMG nerve conduction studies of the upper extremities did not show significant changes compared to previous year, he "recommended conservative management" and physical therapy); id. at 1018 (containing Dr. Mohammad's July 15, 2021 findings after evaluating Plaintiff for numbness of both hands, stating that "[c]onsidering the mild findings, I recommend conservative management at this point"; also "recommend[ing] adjustment of pain medication," use of wrist splint, and physical therapy); see also id. at 1014

(containing Dr. Mohammad's progress note dated October 4, 2021, that Plaintiff "[d]enied depression and anxiety"); id. at 1010 (containing Dr. Mohammad's progress note dated June 23, 2021, documenting that "[Plaintiff] is not complaining as much as before" and that he "[h]as mild depression and anxiety"); id. at 633, 636 (containing Dr. DeSilva's progress note dated February 23, 2021, stating that Plaintiff "claims that he feels stable that he has no auditory or visual hallucinations" and "no suicidal homicidal ideations"); id. at 646 (containing Dr. DeSilva's progress note dated September 29, 2020, noting that Plaintiff "is on Ritalin 5 milligrams and Prozac 20 mg," his "overall mood appears to be better," and "[h]e wants me to renew the Ritalin"); id. at 673, 676 (containing a note from a Certified Physician Assistant Clarion dated July 27, 2020, that Plaintiff was "doing well with medications and follow up visits"); id. at 695 (containing notes from Certified Physician Assistant Clarion dated May 5, 2020, stating the following with respect to Plaintiff's depression: "doing well with [P]rozac"; and the following with respect to Plaintiff's ADHD: "No longer taking Ritalin per patient's choice," Plaintiff "state[d] he is still able to think and his symptoms are controlled.").)

Accordingly, substantial evidence in the record supported the ALJ's conclusion that Plaintiff's treatment was effective in controlling his symptoms and that the level of Plaintiff's treatment was not consistent with his allegations of disabling impairments. (See id.); see also 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v), 416.929(c)(3)(iv)–(v) (providing that an ALJ may consider the "type, dosage, effectiveness, and side effects of any medication," as well as "treatment, other than medication" the claimant receives to relieve "pain or other symptoms."). The ALJ therefore provided another clear and convincing reason, supported by substantial evidence in the record, to discount Plaintiff's subjective symptom testimony.

/ / /

/ / /

/ / /

/ / /

**3. Daily activities**

The ALJ also discounted Plaintiff's subjective symptom testimony because his "independent activities of daily living [we]re not consistent with an individual with disabling limitations." (AR at 62.) The ALJ stated that "[t]here is some indication despite the claimant's testimony that he is in fact working informally on and off in construction and landscaping with his uncle," and concluded that "[t]he claimant's allegations" regarding his disabling functional limitations "are clearly an overstatement." (Id. (citing id. at 1142).)

An ALJ may properly consider the claimant's daily activities in evaluating testimony regarding subjective symptoms. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). An ALJ may discount a claimant's subjective symptom testimony on the following grounds: (1) the claimant's daily activities involve skills that contradict the claimant's other testimony, or (2) the claimant's daily activities meet the threshold for transferable work skills. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). In this case, the ALJ relied on both grounds to discount Plaintiff's statements regarding his subjective symptoms. (See AR at 28, 65.)

The ALJ initially noted that despite Plaintiff's testimony that he could not work due to disabling functional limitations, the evidence in Plaintiff's medical records indicated that Plaintiff "[wa]s in fact working informally on and off in construction and landscaping with his uncle." (See id. at 61 (citing id. at 1142).) Plaintiff's medical records that the ALJ cited contain notes from Dr. DeSilva dated February 17, 2022, documenting Plaintiff's report "that he works on and off in construction and landscaping and gets a little [sic] expenses." (Id.) The ALJ's conclusion that Plaintiff's daily activities involved skills that contradicted Plaintiff's testimony regarding his disabling limitations is further supported by records documenting Plaintiff's reports to multiple medical care providers over the relevant timeframe that he worked with his uncle on remodeling and construction jobs, cleaned his grandfather's backyard, and helped to take care of his grandmother. (See e.g., id. at 403 (containing a note from Dr. Attwill dated

July 24, 2025, documenting Plaintiff's report that "he was cleaning his grandfather's backyard"); id. at 1118, 1122 (continuing notes from Licensed Clinical Social Worker Juarez dated April 7, 2022, that Plaintiff "[w]orks with uncle in contracting"); id. at 1010 (containing Dr. Mohammad's progress note dated June 23, 2021, documenting Plaintiff's report that "[r]ecently [he] did some remodeling in his grandfather's house"); id. at 656 (containing notes from Certified Physician Assistant Rosenblatt dated September 18, 2020, that Plaintiff was "carrying heavy objects" and reported "'too much working' with his uncle in remodeling"); id. at 117, 120 (containing Dr. Staley's notes dated June 18, 2020, that Plaintiff "[w]orks w[ith] his uncle who gives him $50/day for labor"); id. at 712, 715 (containing Dr. DeSilva's notes dated March 6, 2020, documenting Plaintiff's report that "[h]e helps take care of his grandmother"); id. at 748, 751 (containing Dr. DeSilva's notes dated January 3, 2020, stating that Plaintiff "stopped going to school. [N]ow wants to work for his uncle in his construction company.").) The ALJ therefore rationally concluded that Plaintiff's daily activities contradicted his testimony regarding his disabling limitations and level of functioning. See Orn, 495 F.3d at 639; see also Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (stating that an ALJ may properly rely on inconsistencies between claimant's testimony and claimant's daily activities).

The ALJ next cited Plaintiff's statements in Adult Function Report that he spends the day playing video games, writing poems, watching television and listening to music; that he "takes care of personal care," prepares simple meals, performs light household chores, shops in stores, handles money; and that he can walk a mile. (AR at 61 (citing id. at 314–21).) Additionally, the ALJ cited Plaintiff's testimony during the administrative hearing that he plays video games, walks on a trail around his apartment, prepares food in the microwave, and sometimes helps his father to shop for groceries. (Id. at 61 (citing id. at 77–110).) The ALJ stated that Plaintiff "engages in independent activities of daily living, including spending most of his time playing video games and using a computer, except he does not drive," and concluded that those activities "further demonstrate[d]

[Plaintiff's] capability to perform the mental demands of work activity, such as memory, focus, concentration, and interacting with others." (Id. at 65.)

The activities the ALJ cited in his decision are similar to activities that the Ninth Circuit found involve skills transferrable to the workplace. See Burch, 400 F.3d at 681 (finding that the claimant's daily activities could reasonably be found to be transferrable to a workplace, where the activities suggested that the claimant was "quite functional" because she was able to care for her personal needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her and her nephew's finances); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the claimant's activities, which included cooking, house cleaning, doing laundry, and helping her husband in managing finances, "suggest[ed] the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis"). Notably, the ALJ also cited Plaintiff's construction and landscaping work for his uncle. (AR at 62.) "An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." Ford v. Saul, 950 F.3d 1141, 1156 (9th Cir. 2020); see also Nadon v. Bisignano, 145 F.4th 1133, 1136 (9th Cir. 2025) ("An ALJ is permitted to consider any work done by a claimant when evaluating a disability claim, regardless of whether the work constitutes substantial gainful activity."); Richardson v. Comm'r of Soc. Sec., 588 F. App'x 531, 533 (9th Cir. 2014) (finding that the claimant's "ability to work part-time after applying for benefits" supported the ALJ's decision to discount the claimant's testimony); Carter v. Astrue, 472 F. App'x 550, 552 (9th Cir. 2012) (finding that the ALJ properly discounted the claimant's statements, in part, because the claimant "worked part-time for nearly another year after his alleged disability onset date"). The ALJ therefore found that Plaintiff's daily activities met the threshold for transferable work skills. See Orn, 495 F.3d at 639.

The ALJ reasonably discounted Plaintiff's allegations of disabling functional limitations because Plaintiff's daily activities contradicted his testimony and involved skills that were transferable to a work setting. Therefore, Plaintiff's daily activities

provided another clear and convincing reason, supported by substantial evidence in the record, to discount Plaintiff's subjective symptom testimony.

**4. Conclusion**

Substantial evidence in the record supported the ALJ's conclusion that Plaintiff's subjective symptom testimony was inconsistent with the medical record, Plaintiff's treatment was conservative and effective in controlling his symptoms, and Plaintiff's daily activities contradicted his testimony and involved skills that could be transferred to the workplace. The ALJ therefore provided clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

## VII. CONCLUSION

For the reasons stated above, the Court finds that the ALJ properly discounted Plaintiff's subjective symptom testimony. Accordingly, the Court **ORDERS** that judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

**IT IS SO ORDERED.**

Dated: September 28, 2026

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge